**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GWENDOLYN HINTON, | ) | CASE NO. 5:12 CV 1267 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| JUDGE LINDA TUCCI TEODOSIO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

*Pro se* Plaintiff Gwendolyn Hinton filed this action under 42 U.S.C. § 1983, Title VII 42

U.S.C. §2000e, 18 U.S.C. §242, 42 U.S.C. §14141 and Ohio Revised Code §2923.31-36 against

Summit County Juvenile Court Judge Linda Tucci Teodosio, Summit County Juvenile Court

Magistrate James Whited, Detective Scott Rubes, Summit County Children Services Board

Executive Director John Saros, Social Services Manager Sondra R. Bryant, Caseworker Tracey

Alford-Smith, Caseworker Carmelita Shade, Children Services Board Quality Improvement SAR

Reviewer Manager Tom Shade, Gregory Lawrence Long, Guardian Ad Litem Nancy Flower,

Caseworker Elizabeth Schmidt, Children Services Board Quality Improvement SAR Reviewer

Antouanne Hammond, Caseworker Maria Whalen, Social Worker Victoria Diamond, Social

Worker Bob Hager, Social Worker Mr. Humphrey, Social Services Interim Director Sharon

Geffkin, Social Services Manager Sharon Snyder, Children Services Board Clients Rights Officer Sushila Moore, Interim Protective Services Director Anne Ream, Northeast Ohio Behavioral Health Counselor Angela Lanciancese-Augustine, CSEA Case Worker Stephanie Rollins, CSEA Case Worker Chandra Long, Attorney Holly Bednarski, Attorney Lynda Harvey Williams and Attorney Bruce M. Cichocki.  In the Complaint, Plaintiff alleges primary custody of her child was given to another family member.  She seeks monetary damages, and requests that the Summit County Juvenile Court Case No. 08-02-069 be removed to this Court and dismissed.  She asks for a new hearing "in constitutional court of judicial due process, excluding administrative, maritime, or martial law jurisdictions."

Plaintiff also filed an Application to Proceed *In Forma Pauperis*.  That Application is granted.

## I.     Background

Plaintiff's Complaint is disjointed and despite its length, contains very few factual allegations.  Much of the information supporting the Complaint was found in the voluminous exhibits Plaintiff filed to supplement the case.

Plaintiff and Gregory Long are the biological parents of O.L., born in 2005.  Mr. Long has an extensive criminal record which includes convictions for assault, sexual imposition, and domestic violence.  Plaintiff has another son, T.H. who is approximately eleven years older than O.L. and who has a different biological father.  He resides in the home with Plaintiff.

Not long after O.L.'s birth, Long filed an action in the Summit County Domestic Relations Court seeking custody or visitation.  Plaintiff was the legal custodian of O.L., and Long had been allocated parenting time by court order.  Both parties alleged that the other was

not complying with the court-ordered visitation. Plaintiff filed police reports claiming Long did not return the child when visitation concluded. Long filed a Motion to Show Cause why Plaintiff should not be held in contempt claiming Plaintiff would not allow the child to attend visitations.

In 2008, during his visitation with O.L., Long took O.L. to the emergency room because O.L. had bruises on his neck and arms. Emergency room physicians concluded that the bruising was likely caused by physical abuse. Long told the physicians that Plaintiff had caused the bruises. Summit County Children Services ("SCCS") was notified and Plaintiff was arrested. Both O.L. and T.H. were removed from Plaintiff's home by SCCS, which initiated an abuse and dependency action for both children in the Summit County Juvenile Court. O.L. was placed in the temporary kinship care of his 87-year-old paternal grandmother, Juanitia Long on the condition that Mr. Long move out of his mother's house. T.H. was placed in foster care. The criminal charges against Plaintiff were dropped by the prosecutor, who noted on the dismissal that he or she suspected that the wrong person may have been charged with the crime. The prosecutor did not indicate which other person he or she suspected of perpetrating the abuse.

Although the criminal charges were dropped, both children remained in the temporary custody of SCCS. Ms. Whalen was assigned as the case worker. Plaintiff contends Whalen demonstrated an obvious bias in favor of the Long family and worked to keep O.L. in their care. She states she requested unsupervised visitations after the criminal charges were dropped and was told by Whalen that her request was denied. She asked to visit with both of her sons at the same time. Whalen also denied this request. Plaintiff claims Ms. Talley, a friend of the Long family who is unrelated to O.L., transported O.L. to the visits. Plaintiff expressed concern to

-3-

Whalen that Talley grabbed O.L.'s arm when he tried to run to his mother at the beginning of the visits, and at the end of the visits. Plaintiff complained that Talley was residing with the Long family and was parenting O.L. Whalen dismissed all of these concerns. O.L. had numerous behavioral problems in preschool after the separation from Plaintiff. Plaintiff expressed concern about these issues as well and felt they were not adequately addressed. Eventually, SCCS agreed to transport O.L. to the visits so Talley would not be present.

O.L. was referred by Whalen to the Northeast Ohio Behavioral Health Center for counseling. It appears that the Long family and Plaintiff also attended some counseling sessions there; however, O.L. was the primary client. Talley transported O.L. to these visits and was present at many of these sessions. Plaintiff filed notes from social worker Angela Lanciancese-Augustine regarding several counseling sessions she had with O.L. and other interested parties in 2008. In these notes, Lanciancese-Augustine wrote that O.L. was very bonded with Talley, who Lanciancese-Augustine referred to as "Cathy." She referred in her notes to Juanita Long as "Ms. Long", Gregory Long as "Mr. Long" and Plaintiff as simply "Biomom."

In July 2008, Talley reported to Lanciancese-Augustine that while Talley was watching O.L. during the week, O.L. told her that his mother was the person who had choked him. Lanciancese-Augustine added in her notes that Tally told her O.L. had a "high startle response and avoidance with mother." Lanciancese-Augustine appears to have accepted both of these reports as true and reported these revelations back to Whalen.

In other notes, Lanciancese-Augustine observed that while in the care of the Longs, O.L. had begun exhibiting overtly sexual behaviors which were beyond the norm and experience of a child O.L.'s age. In fact, O.L. was expelled from preschool for these highly sexual remarks and

-4-

behaviors.  Lanciancese-Augustine referred the matter to SCCS for a sexual abuse investigation.

Plaintiff claims neither Lanciancese-Augustine nor Whalen informed her that sexual abuse was

suspected while O.L. was in the paternal grandmother's home.  Plaintiff does not know how that

investigation progressed.

Plaintiff also expressed concern for O.L.'s physical safety in the Long home.  She

claimed he did not have a room of his own in the house.  She claimed that O.L. appeared at one

visit with a large lump on his forehead.  Plaintiff asked if he had been examined by a doctor and

was told that this had occurred.  She then asked for copies of the medical records to verify that

he had received medical attention but her request was ignored.  She states there were suggestions

from O.L.'s school that he was exhibiting overly aggressive behaviors.  She claims she called the

Long house one evening to speak with O.L. and heard O.L. screaming in the background.  When

she questioned Ms. Long, she was told that Ms. Long had spanked O.L. with a switch because he

had taken some of her pills and dumped them in water.  Ms. Long admitted to Lanciancese-

Augustine and SCCS that she occasionally utilized corporal punishment to discipline O.L.

After a period of time, T.H. was returned to Plaintiff's primary care.  Plaintniff requested

reunification with O.L. who remained in the temporary custody of the maternal grandmother.

She contends Whalen would not work with her for reunification with O.L.  At some point in

2008 or 2009, both parents sought permanent legal custody of O.L.  Gregory Long was granted

legal custody by the Juvenile Court in November 2009.  Plaintiff does not indicate what

visitation order is in place for her and O.L.  She does indicate that Mr. Long moved out of the

area and did not provide a way for her to have contact with him or O.L.  She claims she was not

abusive to O.L. and should have had custody returned to her in 2008.  She indicates Mr. Long's

sister and daughters work for the State of Ohio and she believes that may have swayed the Defendants' decisions. She contends that Juvenile Court officials and social workers failed to work with her to help her regain custody of the child. She also indicates she is the better parent, and claims Mr. Long and his family interfere with visitation and her attempts to regain custody of her child.

The body of the Complaint contains no specific claims for relief. All of the claims are listed in the case caption. She requests that the Court "attach property for appearance of Mr. Long for risk of flight." She states she is seeking relief under 42 U.S.C. § 1983 for violation of the Fourth and Fourteenth Amendments. She includes a claim for discrimination and fraud under Title VII, 42 U.S.C. §2000e, and seeks relief under 18 U.S.C. §242 and 42 U.S.C. §14141. Finally, Plaintiff claims the Defendants violated her rights under Ohio Revised Code §2923.31 which she refers to as "RICO." She seeks compensatory and punitive damages, injunctive relief, removal of the Juvenile Court action to federal court, reversal of the decisions in that case, and dismissal of the action.

## II.       Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[1] *Neitzke v.*

---

[1] An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir.

(continued...)

-6-

*Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal* 556 U.S. 662, 677-680 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 677. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc*., 151 F.3d 559, 561 (6th Cir.1998).

### III. Analysis

#### A. Rooker Feldman

As an initial matter, this Court does not have jurisdiction to reverse a state court judgment. United States District Courts do not have jurisdiction over challenges to state court

---

(...continued)
1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

decisions even if those challenges allege that the state court's action was unconstitutional.  *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n. 16 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923).  Federal appellate review of state court judgments can only occur in the United States Supreme Court, by appeal or by writ of certiorari.  *Id.*  Under this principle, generally referred to as the Rooker-Feldman Doctrine, a party losing his or her case in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court based on the party's claim that the state judgment itself violates his or her federal rights.  *Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994).  Federal jurisdiction cannot be invoked merely by couching the claims in terms of a civil rights action.  *Lavrack v. City of Oak Park*, No. 98-1142, 1999 WL 801562, at *2 (6th Cir. Sept. 28, 1999); *see Valenti v. Mitchell*, 962 F.2d 288, 296 (3d Cir.1992).

The United States Sixth Circuit Court of Appeals has applied two elements to a Rooker-Feldman analysis.  First, in order for the Rooker-Feldman doctrine to apply to a claim presented in federal district court, the issue before the Court must be inextricably intertwined with the claim asserted in the state court proceeding.  *Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir. 1998); *see Tropf v. Fidelity National Title Insurance Co.*, 289 F.3d 929, 937 (6th Cir. 2002).  "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment."  *Catz*, 142 F.3d at 293.  The Rooker-Feldman doctrine applies when the party losing his case in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself.  *Coles v. Granville*, 448 F.3d 853, 857-59 (6th Cir. 2006).  Second, the Rooker-Feldman doctrine precludes a district

court's jurisdiction where the claim is a specific grievance that the law was invalidly or unconstitutionally applied in Plaintiff's particular case as opposed to a general constitutional challenge to the state law applied in the state action. *Id.*

In the present action, Plaintiff's claims directly attack the state court's decision to grant temporary custody of O.L. to SCCS and to award permanent custody of her child to his father, Mr. Long. The allegations in Complaint concern specific grievances that the law was incorrectly applied to Plaintiff's case, and are clearly predicated on her belief that the state court was mistaken in rendering its decisions against her. Furthermore, Plaintiff requests as relief that the state court's judgment be reversed. Any review of the constitutional claims asserted in this context would require the Court to review the specific issues addressed in the state court proceedings against her. This Court lacks subject matter jurisdiction to conduct such a review or grant the relief as requested. *Feldman*, 460 U.S. at 483-84 n. 16; *Catz*, 142 F.3d at 293.

**B. *Res Judicata***

To the extent Plaintiff is seeking to litigate the question of legal custody again in a different court in the hope of achieving a different result, she is barred from doing so. Plaintiff cannot file an action in federal court to relitigate matters that were already decided in state court proceedings. Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state. 28 U.S.C. § 1738; *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007); *Young v. Twp. of Green Oak*, 471 F.3d 674, 680 (6th Cir. 2006). To determine the preclusive effect a prior state court judgment would have on the present federal action, the Court must apply the law of preclusion of the state in which the prior judgment was rendered. *Migra v. Warren City School District Board of Educ.* 465 U.S. 75, 81 (1984).

Plaintiff alleges she received a judgment on the issue of custody from the Ohio courts in 2009.  She was represented by counsel.  Plaintiff has now filed the within federal civil rights case claiming the juvenile court judge and various employees of Children Services made the wrong decision.  She contends she was not an abusive parent and therefore her children should not have been placed in foster care and she should have been granted full legal custody of them.  This Court must look to Ohio's law on preclusion to determine if the state court judgments in the Juvenile Court action bar Plaintiff from proceeding with the claims she asserts in this action.

In Ohio, the doctrine of *res judicata* encompasses the two related concepts of claim preclusion and issue preclusion.  *State ex rel. Davis v. Pub. Emp. Ret. Bd.*, 120 Ohio St. 3d. 386, 392 (2008).  "Claim preclusion prevents subsequent actions, by the same parties or their privies, based on any claim arising out of a transaction that was the subject matter of a previous action." *Grava v. Parkman Twp.*, 73 Ohio St. 3d 379, 382 (1995).  Claim preclusion also bars subsequent actions whose claims "could have been litigated in the previous suit." *Id.*  By contrast, issue preclusion, or collateral estoppel, prevents the "relitigation of any fact or point that was determined by a court of competent jurisdiction in a previous action between the same parties or their privies," even if the causes of action differ. *Id.*

Here, both the doctrine of claim preclusion and issue preclusion bar relitigation of the claims Plaintiff asserts in this Complaint.  The parties in this action are the same as the parties in juvenile court action, with the exception of Judge Teodosio and Magistrate Whited, who presided over the action.  Plaintiff had the opportunity to assert her claims in the course of the Juvenile Court actions and on appeal of the juvenile court decisions.  The doctrine of claim preclusion bars her from litigating these claims again in this Court.  Moreover, the issue of the

-10-

permanent custody has already been considered and decided by the juvenile court.  Even if the

causes of action in this action are new, all of the facts necessary to support those claims were

determined by the state courts.  This Court must give full faith and credit to those judgments.

Plaintiff is barred from relitigating those matters in this Court.

### C.  Claims against Defendants in their Official Capacities

Even if Plaintiff could proceed with this action, her claims against the Defendants in their

official capacities would be dismissed.  An official capacity claim asserted against a state or

local government officer is the equivalent of a claim asserted against the government entity the

officer represents. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).

Consequently, Plaintiff's claims against Detective Rubes, John Saros, Sondra R. Bryant, Tracey

Alford-Smith, Carmelita Shade, Tom Shade, Elizabeth Schmidt, Antouanne Hammond, Maria

Whalen, Victoria Diamond, Bob Hager, Mr. Humphrey, Sharon Geffkin, Sharon Snyder, Sushila

Moore, Anne Ream, Stephanie Rollins, Chandra Long, in their official capacities are redundant

as they are all employees of Summit County.  *Id.*; *Von Herbert v. City of St. Clair Shores*, No.

02-1063, 2003 WL 1194304, *6 (6th Cir. March 11, 2003).  The claims against these Defendants

in their official capacities are therefore construed as asserted against Summit County.

As a rule, local governments may not be sued under 42 U.S.C. § 1983 for an injury

inflicted solely by employees or agents under a *respondeat superior* theory of liability. *See*

*Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691(1978).  "Instead, it is when execution of

a government's policy or custom, whether made by its lawmakers or by those whose edicts or

acts may fairly be said to represent official policy, inflicts the injury that the government as an

entity is responsible under § 1983." *Id.* at 694.  A municipality can therefore be held liable when

-11-

it unconstitutionally "implements or executes a policy statement, ordinance, regulation, or decision officially adopted by that body's officers." *Id.* at 690; *DePiero v. City of Macedonia*, 180 F.3d 770, 786 (6th Cir. 1999). The Complaint contains no suggestion of a custom or policy of Summit County which resulted in a deprivation of Plaintiff's constitutional rights. Plaintiff's claims against Rubes, Saros, Bryant, Alford-Smith, Shade, Shade, Schmidt, Hammond, Whalen, Diamond, Hager, Humphrey, Geffkin, Snyder, Moore, Ream, Rollins, and Long, in their official capacities are also dismissed.

### D. Judge Tucci Teodosio and Magistrate Whited in their Official Capacities

Plaintiff also includes a claim against Summit County Juvenile Court Judge Linda Tucci Teodosio and Magistrate Judge James Whited in their official capacities. Because the Juvenile Court is an arm of the State of Ohio, a suit against Judge Tucci Teodosio or Magistrate Whited in their official capacities is a suit against the State of Ohio itself. *See Mumford v. Basinski*, 105 F.3d 264, 269 (6th Cir.1997); *see also Will*, 491 U.S. at 71. The Eleventh Amendment is an absolute bar to the imposition of liability upon states or their agencies. *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005). Plaintiff cannot bring a claim for damages against Judge Tucci Teodosio or Magistrate Whited in their official capacities.

### E. Judge Tucci Teodosio and Magistrate Whited in their Individual Capacity

Moreover, Plaintiff cannot proceed with a claim against Judge Tucci Teodosio or Magistrate James Whited in their individual capacities. Judicial officers are absolutely immune from civil suits for money damages. *Mireles v. Waco*, 502 U.S. 9, 9 (1991); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). They are accorded this broad protection to ensure that the independent and impartial exercise of their judgment in a case is not impaired by the exposure to

damages by dissatisfied litigants.  *Barnes*, 105 F.3d at 1115.  For this reason, absolute immunity is overcome only in two situations: (1) when the conduct alleged is performed at a time when the Defendant is not acting as a judge; or (2) when the conduct alleged, although judicial in nature, is taken in complete absence of all subject matter jurisdiction of the court over which he or she presides.  *Mireles*, 502 U.S. at 11-12; *Barnes*, 105 F.3d at 1116.  *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978).

Plaintiff cannot overcome the presumption of immunity under the first criteria.  The determination of whether an action is performed in the Defendant's judicial capacity, depends on the "nature" and "function" of the act, not on the act itself.   *Mireles*, 502 U.S. at  13; *Stump* 435 U.S. at 362.  Looking first to the "nature" of the act, the Court must determine whether the conduct giving rise to the claim it is a function generally performed by a judge.  *Stump*, 435 U.S. at 362.  This inquiry does not involve a rigid scrutiny of the particular act in question, but rather requires only an overall examination of the judge's alleged conduct in relation to general functions normally performed by judges.  *Mireles*, 502 U.S. at  13.  Second, an examination of the "function" of the act alleged requires the Court to assess whether the Plaintiff dealt with the judicial officers in their respective judicial roles.

Upon applying these principles, it is evident on the face of the pleading that the Judge and Magistrate were acting in their judicial capacities at all times that the conduct alleged in Plaintiff's Complaint occurred.  The issuance of judicial orders pertaining to shelter care or kinship care temporary placement, permanent legal custody and visitation, and the determination of credibility of witnesses are all actions normally performed by juvenile court judges and magistrates.  Furthermore, Plaintiff interacted with the Judge and Magistrate only when they

-13-

were performing their duties as judicial officers.  Plaintiff cannot overcome the broad application of judicial immunity under this criteria.

Judicial immunity can also be defeated when the conduct alleged, although judicial in nature, is taken in complete absence of <u>all</u> jurisdiction.  *Mireles*, 502 U.S. at 11-12; *Barnes*, 105 F.3d at 1116. (emphasis added.)  When the immunity of the judge is at issue, the scope of the judge's jurisdiction is to be broadly construed.  *Stump*, 435 U.S. at 356-57.  A judge will be not deprived of immunity because the action he or she took was performed in error, done maliciously, or was  in excess of his or her authority.  *Id.*  Actions taken in complete absence of all jurisdiction are those  acts which are clearly outside of the subject matter jurisdiction of the court over which the judge presides.  *King v. Love*, 766 F.2d 962, 965 (6th Cir. 1985); *see Barnes*, 105 F.3d at 1122.  Conversely, merely acting in excess of authority does not preclude immunity.  *See Sevier v. Turner*, 742 F.2d 262, 271 (6th Cir. 1984).

In the present case, there are no allegations set forth in the Complaint which reasonably suggest that Judge or Magistrate acted outside of the subject matter jurisdiction of the Juvenile Court.  The Juvenile Court judges have jurisdiction to hear all matters involving temporary and permanent custody, and the allocation of parenting time and visitation with children adjudged to be abused, neglected or dependent.  OHIO REV. CODE § 2151.353.  Plaintiff contends that the Judge and Magistrate issued orders which Plaintiff believes to be factually mistaken and contrary to Ohio law.  If these allegations are true, Plaintiff's only remedy is an appeal of the order in question.  She does not have recourse against the judge or the magistrate for damages in a civil rights action.

**F.  Claims against Private Party Defendants**

-14-

In addition, Gregory Lawrence Long, Guardian Ad Litem Nancy Flower, North East Ohio Behavioral Health Counselor Angela Lanciancese-Augustine, Attorney Holly Bednarski, Attorney Lynda Harvey Williams and Attorney Bruce M. Cichocki. appear to be private parties who are not subject to suit under 42 U.S.C. §1983.  To establish a prima facie case under 42 U.S.C. § 1983, Plaintiff must assert that a person acting under color of state law deprived her of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).  Generally to be considered to have acted "under color of state law," the Defendant must be a state or local government official or employee. Attorney Nancy Flower was appointed by the court to perform an evaluation. Bednarski, Williams and Cichocki are private attorneys who represented Plaintiff at various times during the custody dispute.  Lanciancese-Augustine was the counselor at the Northeast Ohio Behavioral Health Center.  Mr. Long is the father of the child in question.  None of these Defendants appears to be government employees or officials.

As private parties, these Defendants will only be subject to suit under § 1983 if their actions constitute "state action" may be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  The Supreme Court has established four tests for determining whether the challenged conduct may be fairly attributable to the state for purposes of a § 1983 claim. These are: (1) the public function test; (2) the state compulsion test; (3) the symbiotic relationship or nexus test; and (4) the entwinement test. *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir.1992); *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 298 (2001).  The actions of Lanciancese-Augustine, Long, Flower, Bednarski, Williams and Cichoki do not fit any of these criteria.

-15-

The public function test requires that the private entity exercise powers that are traditionally exclusively reserved to the state, such as holding elections, *Flagg Bros. v. Brooks*, 436 U.S. 149, 157 (1978), or exercising the power of eminent domain. *See Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 353 (1974). Conducting mental health evaluations, making recommendations to the court, and representing clients are not powers reserved exclusively to the state. The public function test therefore cannot be the basis for "state action" for a §1983 claim.

The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the state. *See Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). More than mere approval or acquiescence in the initiatives of the private party is necessary to hold the state responsible for those initiatives. *Id.* Again, Plaintiff alleges only that these Defendants played some role in the custody litigation. There is no suggestion that the state exercised such coercive powers that these Defendants' actions cannot be deemed to be their own.

Under the symbiotic relationship or nexus test, the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself. *See Jackson*, 419 U.S. at 357-58; *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 724-25 (1961). This occurs only when the party "acted together with or ... obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action." *Lugar*, 457 U.S. at 937. Private parties are not acting under color of state law merely by acting as complainants or witnesses in state court actions. *Grow v.*

*Fisher*, 523 F.2d 875 (7th Cir. 1975); *see Briscoe v. La Hue*, 460 U.S. 325 (1983); *Hernandez v. Schwegmann Brothers Giant Supermarkets, Inc.*, 673 F.2d 771 (5th Cir. 1982); *Blevins v. Ford*, 572 F.2d 1336 (9th Cir. 1978).  Similarly, a privately retained attorney is not considered a state actor under 42 U.S.C. § 1983.  *Washington v. Brewer*, No. 91-1935, 1991 WL 243591 (6th Cir. Nov. 21, 1991); *see also, Polk County v. Dodson*, 454 U.S. 312, 321 (1981).  There is no indication that these Defendants secured significant assistance from the state in performing their duties.

The entwinement test requires that the private entity be "entwined with governmental policies" or that the government be "entwined in [the private entity's] management or control." *Brentwood*, 531 U.S. at 296.  The crucial inquiry under the entwinement test is whether the "nominally private character" of the private entity "is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings [such that] there is no substantial reason to claim unfairness in applying constitutional standards to it." *Id.* at 298.  The fact that a public entity has acted in compliance with a private entity's recommendations does not transform the private entity into a state actor. *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179 (1988).  Although these Defendants were performing duties related to the custody litigation there is no suggestion that the government or the court was excessively intertwined with the management and control of their businesses or operations.

Because Gregory Lawrence Long, Nancy Flower, Angela Lanciancese-Augustine, Holly Bednarski, Lynda Harvey Williams and Bruce M. Cichocki do not qualify as state actors under any of the four tests set forth by the Supreme court, they cannot be held officially or individually liable for constitutional violations under 42 U.S.C. §1983.  The constitutional claims against

-17-

them under §1983 are dismissed.

### G. Claims against Summit County Employees in their Individual Capacities

Although Plaintiff states in general terms in that she believes her Fourth and Fourteenth Amendment rights were violated, she includes no allegations in her Complaint to explain what specific actions each of the Defendants took that led to these violations. Plaintiff cannot establish the liability of any Defendant absent a clear showing that the Defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). The Complaint actually contains no coherent allegations that suggest the actions that any of these Defendants took in connection with the custody action. Federal Rule of Civil Procedure 8(a) requires a Plaintiff to submit a short, plain and concise statement of her claims and relief. Neither the Court nor the Defendants are responsible for searching through the Complaint and its voluminous exhibits in order to find a clear and succinct statement of each claim for relief. It is Plaintiff's Obligation to edit and organize their claims and supporting allegations into a manageable format. *Hollon v. Eastern Ky. Correctional Complex,* No. 10–CV–177–KSF, 2010 WL 2924091, at *2 (E.D.Ky. July 22, 2010). Plaintiff has not set forth a viable claim under 42 U.S.C. §1983 against any of the Defendants in their individual capacities.

### H. No Private Right of Action

The caption of Plaintiff's Complaint shows that she is attempting to bring this lawsuit against Defendants under 18 U.S.C. § 242, and 42 U.S.C. § 14141. She lacks standing, however to assert a claim under either of these statutes. Title 18 U.S.C.§ 242 is a federal criminal statute

-18-

that cannot provide the basis for any private cause of action by the Plaintiff.  *U.S. v. Oguaju*, No. 02-2485, 2003 WL 21580657, *2 (6th Cir. July 9, 2003); *see United States v. Wadena*, 152 F.3d 831, 846 (8th Cir.1998).

Furthermore, Plaintiff has no standing to bring a claim against the Defendants under 42 U.S.C. § 14141.  That statute only applies to juveniles, and it does not create a private cause of action.  *CP, ex rel. Powell v. Tennessee*, No. 3:10–CV–126,  2010 WL 2598105, at *3 (E.D.Tenn. June 24, 2010).[2]  Instead, it specifically allows the Attorney General to bring a civil action to "obtain appropriate equitable and declaratory relief to eliminate the pattern or practice." 42 U.S.C. § 14141.  Plaintiff cannot use this statute to obtain relief from the Defendants.

## I. Title VII, 42 U.S.C. § 2000e

Plaintiff also indicates she is asserting a claim under Title VII for "discrimination and fraud."  (ECF No. 1 at 1.)  Title VII concerns discrimination in the course of employment.

---

[2]     *See Knight v. City of Balch Springs*, No. 3:11–CV–1122–B–BH, 2011 WL 3519938 at *2 (N.D.Tex.2011); *Pitts v. City of Cuba*, 4:10–CV–274 ERW, 2011 WL 2433401, at *2, slip copy (E.D.Mo. June 16, 2011); *Mendia v. City of Wellington*, No. 10–1132–MLB, 2010 WL 4513408, at * 5, slip copy (D.Kan.Nov.2, 2010); *Rutledge v. Town of Chatham*, No. 4:10CV0035, 2010 WL 3835662, at * 1, slip copy (W.D.Va. Sept. 30, 2010); *Coleman v. Cumberland Police Dept.*, No. 1:09–CV–734–DML–LJM, 2010 WL 2735623, at *4, slip copy (S.D.Ind. July 9, 2010; *Gray v. Mich. Dep't of Human Servs.*, No. 09–CV–12596, 2010 WL 1755055, at *3, slip copy (E .D.Mich.Apr.22, 2010); *Wright v. Taylor*, No. 08–5944, 2009 WL 2342567, at *4, slip copy (E.D.Pa. July 28, 2009); *Gallacher v. Kisner*, No. 2:08–CV–845 TC, 2009 WL 2058432, at *5, slip copy (D.Utah July 15, 2009); *Clarke v. Upton*, No. CV–F–07–888 OWW/SMS, 2009 WL 1460815, at *25, slip copy (E.D.Cal. May 26, 2009); *Davis v. Clearlake Police Dept.*, No. C–07–03365 EDL, 2008 WL 4104344, at *11 (N.D.Cal.Sept.3, 2008); *Leisure v. City of Reynoldsburg*, 2:07–cv–411, 2008 WL 4137961, at *7 (S.D.Ohio Aug.29, 2008); *Greer v. Hillsborough County Sheriff's Dept.*, No. 8:04–CV2034T23MSS, 2005 WL 2416031, at *2–3 (M.D.Fla.Sept.30, 2005); *Thompson v. Washington*, No. CO4–2554–L, 2005 WL 2045886, at *1 (W.D.Wash. Aug. 25, 2005)). (citing *Johnson v. Missouri City*, No. H–07–1739, 2009 WL 6767109, at *1 n. 1 (S.D.Tex.Mar.9, 2009); *Huerta v. Garcia*, No. B–07–39, 2007 WL 3120128, at *3 (S.D.Tex.Oct.23, 2007))

Plaintiff is not claiming she was the victim of workplace discrimination.  This statute is not

applicable to the facts set forth in the Complaint.

### J.  State Law Claims

Finally, Plaintiff asserts a claim under Ohio Revised Code §§ 2923.31-2923.36. for

criminal conspiracy.  The statute also contains a provision authorizing a civil action:

> Any person who is injured or threatened with injury by a violation
> of section 2923.32 of the Revised Code may institute a civil
> proceeding in an appropriate court seeking relief from any person
> whose conduct violated or allegedly violated section 2923.32 of
> the Revised Code or who conspired or allegedly conspired to
> violate that section, except that the pattern of corrupt activity
> alleged by an injured person or person threatened with injury shall
> include at least one incident other than a violation of division
> (A)(1) or (2) of section 1707.042 or division (B), (C)(4), (D), (E),
> or (F) of section 1707.44 of the Revised Code, of 18 U.S.C. 1341,
> 18 U.S.C. 1343, 18 U.S.C. 2314, or any other offense involving
> fraud in the sale of securities.

To be guilty of a violation established by Ohio Revised Code § 2923.32, the Defendants must:

(1) be employed by, or associated with, any enterprise and conduct or participate in, directly or

indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an

unlawful debt; (2) through a pattern of corrupt activity or the collection of an unlawful debt,

acquire or maintain, directly or indirectly, any interest in, or control of, any enterprise or real

property; (3) knowingly receive any proceeds derived, directly or indirectly, from a pattern of

corrupt activity or the collection of any unlawful debt, and use or invest, directly or indirectly, in

the acquisition of any title to, or any right, interest, or equity in, real property or in the

establishment or operation of any enterprise.  Ohio Rev. Code § 2923.32(A).

Here, Plaintiff alleges very few facts.  There is no suggestion that any of the Defendants

engaged in a criminal enterprise, corrupt activity, or collection of an unlawful debt.  Plaintiff

does not specify the actions each Defendant took which she believes to be in furtherance of a criminal enterprise.  Plaintiff simply concludes that this statute has been violated.  A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard.  *Iqbal,*  556 U.S. at 677.

### IV.      Conclusion

Accordingly, Plaintiff's Application to Proceed *In Forma Pauperis* is granted and this action is dismissed pursuant to 28 U.S.C. §1915(e).  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[3]

IT IS SO ORDERED.

Date: October 29, 2012                              s/John R. Adams
                                                    _____
                                                    JOHN R. ADAMS
                                                    UNITED STATES DISTRICT JUDGE

_____

[3]      28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.